NIEMEYER, Circuit Judge,
dissenting:
The Coal Industry Retiree Health Benefit Act of 1992 (the “Coal Act”), 26 U.S.C. § 9701 et seq., requires “signatory operators” to pay to the United Mine Workers of America Combined Benefit Fund (the “Combined Fund”) specified healthcare premiums for retired coal miners who have been “assigned” to the signatory operators by the Commissioner of Social Security. See id. § 9704. The amount of premiums payable by a signatory operator is fixed by the number of retirees assigned to the signatory operator under § 9706. See id. § 9704(b)(1). And section 9706(a) provides, in relevant part, that the Commissioner of Social Security “shall, before October 1, 1993, assign each coal industry retiree who is an eligible beneficiary to a *439 signatory operator.” (Emphasis added). If not so assigned, the retirees must nevertheless be paid benefits by the Combined Fund from its funds. See id. § 9703.
In this case, the Commissioner of Social Security purported to assign retired miners Grover Bolling and Orvil Brewer to Pardee Coal Company roughly two years and four years, respectively, after the deadline for assignments imposed by Congress. Bolling was assigned to Pardee on September 20, 1995, and Brewer, on September 22, 1997. Pardee refused to pay these retirees’ premiums because the retirees’ assignment to Pardee was untimely. The district court agreed with Pardee, and I would affirm.
Because these assignments did not comply with the statutory deadline imposed by the Coal Act for the assignment of retirees to signatory operators, the assignments may not be charged to the signatory operator. See Dixie Fuel Co. v. Comm’r of Soc. Sec., 171 F.3d 1052, 1063-64 (6th Cir.1999). The Sixth Circuit in Dixie Fuel, after explaining why the statutory deadline is important to the calculation of the obligations of every signatory operator, concluded that the courts were not free to ignore Congress’ deadline. The court stated:
By specifying in the statute that “the Commissioner of Social Security shall, before October 1, 1993, assign each coal industry retiree ... to a signatory operator,” and by resting the entire scheme for calculation of premiums of the assignments made as of that date, Congress did speak directly and unambiguously on the issue of when the Commissioner’s authority to make those assignments expired. “If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.”
171 F.3d at 1063 (quoting Chevron v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).
The majority opinion seeks to adjust the financial equities of the Coal Act by judicial mandate, and in doing so, it ignores the statutory deadline unambiguously stated by Congress in the Act. In addition, this approach creates an unnecessary circuit split with the Sixth Circuit’s decision in Dixie Fuel' Because I agree with Dixie Fuel’s conclusion that we must follow the plain, unambiguous language of the Coal Act, I respectfully dissent.